## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : <br> : <br> : |
| Plaintiff, | :     Civil Action No. <br> : |
| v. | :     JURY TRIAL DEMANDED <br> : |
| VLAD B. SPIVAK and <br> SHIRMILA O. DODDI | : |
| Defendants. | : <br> : |

_____:

## COMPLAINT

Plaintiff Securities and Exchange Commission ("SEC" or "Commission") alleges the following against Defendants Vlad B. Spivak ("Spivak") and Shirmila O. Doddi ("Doddi"):

## SUMMARY

1.      This insider trading case arises from the illegal tipping in October 2011 of material, nonpublic information by Doddi, then a financial analyst in the commercial banking group of Wells Fargo Bank, N.A. ("Wells Fargo" or the "Bank"), about a possible corporate transaction involving American Dental Partners, Inc. ("ADPI").   This information soon centered on an acquisition of ADPI by JLL Partners, Inc.  ("JLL"), a private equity firm.

2.      Doddi tipped her romantic partner, Spivak, with the material, nonpublic information about ADPI that she had learned in the course of her employment.

3.      As a result of Doddi's tips, Spivak purchased ADPI stock over a period of days from mid-October of 2011 through November 1, 2011.  Spivak made these purchases both in his own brokerage accounts and in his mother's brokerage account.

4.      On November 7, 2011, ADPI publicly announced that it had signed a merger agreement with JLL, whereby JLL would acquire all of ADPI's outstanding shares for $19.00 per share (the "acquisition").  The announcement caused a seventy-nine percent increase in the price of ADPI's common stock.

5.      Following the announcement, Spivak sold the shares of ADPI that he had purchased in his and his mother's accounts for a profit of $222,357.

6.      By engaging in the trading scheme describe herein, Defendants violated and, unless enjoined and restrained, will continue to violate Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

7.      By this action, the Commission seeks: (a) to enjoin Defendants from further violating the securities laws in the future; (b) to compel the disgorgement of Spivak's unlawful profits with prejudgment interest; and (c) to impose civil monetary penalties on each Defendant.

**JURISDICTION AND VENUE**

8.      The Commission brings this action pursuant to Sections 21(d) and 21A of the Exchange Act [15 U.S.C. §§ 78u(d), 78u-1].

9.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, and Sections 21(d) and 21A of the Exchange Act [15 U.S.C. §§ 78u(d), 78u-1].  The Defendants have directly or indirectly made use of the means or instruments of interstate

commerce, or of the mails, or the facilities of a national securities exchange in connection with the transactions, acts, practices and courses of business alleged herein.

10.     Venue is proper under 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act [15 U.S.C. § 78aa] because certain acts or transactions constituting the violations occurred in this district.

## DEFENDANTS

11.     **Vlad B. Spivak**, age 39, resides in Medford, Massachusetts.  During the relevant time period, Spivak was unemployed and supported himself, in part, as a trader in securities.

12.     **Shirmila Doddi**, age 27, resides in San Diego, California.  During the relevant time period Doddi resided in Boston, Massachusetts, and was employed as a financial analyst in the commercial banking group of Wells Fargo.

## RELEVANT ENTITIES

13.     **American Dental Partners, Inc.** was a Delaware corporation with its principal place of business in Wakefield, Massachusetts.  ADPI provided dental practice management services to dental group practices.  On November 7, 2011, ADPI announced that it had entered into a merger agreement with JLL Partners, Inc., whereby JLL would acquire ADPI at $19.00 per share.  On February 9, 2012, under the terms of the merger agreement, JLL, through its affiliated entities, completed its acquisition of ADPI.  Until February 9, 2012, American Dental Partners, Inc.'s common stock was traded on the NASDAQ exchange under the ticker symbol "ADPI" and registered under Section 12(b) of the Exchange Act.

14.     **JLL Partners, Inc.**  JLL Partners, Inc. is a private equity investment firm with its headquarters in New York, New York.

15.     **Wells Fargo Bank, N.A.,** is a national bank that provides retail, commercial, and corporate banking services.  Wells Fargo Bank, N.A. is headquartered in Sioux Falls, South Dakota, and is a wholly-owned subsidiary of Wells Fargo & Co., a Delaware corporation with its principal place of business in San Francisco, California.

## FACTS

**I.  Doddi's Access to Material Nonpublic Information Regarding Possible Corporate Transactions Regarding ADPI**

16.     As a financial analyst in the commercial banking group at Wells Fargo, Doddi often had access to nonpublic information about companies that were clients of the Bank. Such nonpublic information included confidential financial projections, as well as information about potential transactions involving the Bank's clients.

17.     At all relevant times, Doddi was aware that she had a duty to the Bank to keep such nonpublic information confidential.

18.     In March 2011, individuals from a Wells Fargo investment bank affiliate (Wells Fargo Securities) met with executives from ADPI to discuss possible merger and acquisition possibilities.  At that time, ADPI said that it was interested in possibly acquiring other companies, but did not see itself as an acquisition candidate.

19.     Starting in approximately May 2011, Doddi was assigned to be the financial analyst for ADPI, which was then a commercial banking client of the Bank.  In September 2011, Doddi learned that the investment bankers from the Bank's affiliate had identified a possible transaction that they thought would interest ADPI.

20.     The investment bankers prepared a presentation for ADPI.  Doddi received the presentation materials as an attachment to an e-mail on the morning of September 26, 2011.  Later that day, there was an internal conference call involving personnel from the Bank and its affiliated investment bankers to discuss the presentation.

21.     The relationship manager for ADPI at the Bank attended a lunch meeting with the CFO of ADPI on October 6, 2011.  Individuals from the Wells Fargo investment bank had been invited, but were unable to attend.  Among the matters discussed at that luncheon was a possible meeting with the investment bankers to discuss merger and acquisition ideas.  ADPI's CFO told the relationship manager that any such discussion should be put off for several weeks.

22.     Doddi was not present at this luncheon, but in the course of her employment learned that it had taken place.  She also learned that one of the subjects discussed at the meeting was possible merger and acquisition activity involving ADPI.

23.     On October 13, 2011, Doddi received an email from the relationship manager for ADPI at the Bank.  He told Doddi, among others, that ADPI's CFO had called him that morning, on a "highly confidential basis," to inform him that ADPI had agreed to be acquired by JLL Partners for $20 per share in a going-private transaction.  The email, labeled "HIGHLY CONFIDENTIAL" in the subject line, further stated that ADPI hoped to publicly announce the transaction in the first week of November 2011.

24.     Doddi knew that she he owed a duty of trust and confidence to the Bank which required her to maintain the confidentiality of all material, nonpublic information that she received relating to ADPI.

**II.     Doddi's Tipping and the Resulting Trading**

**A.     Doddi Tipped Spivak with Material, Nonpublic Information**

25.     Doddi and Spivak met at a salsa dancing club in early 2011 and developed a romantic relationship that lasted at least through the end of 2011.

26.     Doddi and Spivak communicated on an almost daily basis throughout 2011, including by telephone, text messages, and Facebook's messaging service.

27.     Doddi and Spivak also frequently stayed overnight at each other's homes during 2011, including the period prior to October 2011.

28.     Spivak described himself to Doddi as a "day trader," and frequently talked to Doddi about the different stocks that he traded.

29.     Spivak was aware that Doddi had access to material, nonpublic information through her job at the Bank, and that she had a duty not to disclose such information to him.

30.     On multiple occasions, Spivak asked Doddi to provide him with nonpublic information that she had acquired in the course of her employment.  Spivak further told Doddi that insider trading was not a big deal and that individuals rarely get caught.

31.     With one exception, Doddi rejected Spivak's requests for inside information, telling him that she was not supposed to discuss such information with him.

32.     Despite her refusal to provide information on prior occasions, Doddi did have several communications with Spivak regarding ADPI.

33.     Between October 6, 2011, and October 13, 2011, and in violation of her duty to maintain the confidentiality of such information, Doddi knowingly provided Spivak with material, nonpublic information about the possibility of merger and acquisition

activity involving ADPI.  Doddi provided this information with the intention that Spivak use the information to purchase ADPI stock.

34.      Between October 6, 2011, and October 9, 2011, Doddi told Spivak that she had learned at work that ADPI was potentially going to be involved in a business combination transaction.  Spivak knew or should have known that the information Doddi provided him about ADPI was confidential information that she had obtained in the course of her employment at the Bank.  Spivak further knew or should have known that Doddi had disclosed such information to him in violation of her duty of trust and confidence to the Bank.

35.      On the afternoon of October 13, 2011, less than an hour after Doddi had received the email from her supervisor detailing the potential acquisition of ADPI by JLL, she sent a text to Spivak confirming that a transaction involving ADPI was going to take place.  Spivak knew or should have known that the information Doddi provided him about ADPI was confidential information that she had obtained in the course of her employment at the Bank.  Spivak further knew or should have known that Doddi had disclosed such information to him in violation of her duty of trust and confidence to the Bank.

36.      Although Doddi did not trade on the information, in tipping Spivak, she conferred a gift upon a romantic partner.

### B.      Spivak Purchased ADPI Stock on the Basis of the Material, Nonpublic Information Received from Doddi

37.      Between October 10, 2011, and November 1, 2011, Spivak purchased 17,100 shares of ADPI stock in three TD Ameritrade accounts that were in his name.  In addition, between October 12, 2011, and October 17, 2011, Spivak purchased 8,060

shares of ADPI stock in a Fidelity account that was in the name of his mother, Lyudmila Spivak.

38.     On November 7, 2011, ADPI publicly announced that it had signed a merger agreement with JLL, whereby JLL would acquire all of ADPI's outstanding shares for $19.00 per share (the "acquisition").  The announcement caused a seventy-nine percent increase in the price of ADPI's common stock.

39.     Between November 10, 2011, and February 1, 2012, Spivak sold all 25,160 shares of ADPI that he had purchased in his and his mother's accounts for total profits of $222,357.

40.     Spivak's mother died in April of 2014.  The assets in the account of Spivak's mother in which the trading in ADPI had taken place were transferred to Spivak as the beneficiary on May 7, 2014.

## CLAIM FOR RELIEF

### Violations of Exchange Act Section 10(b) [15 U.S.C. § 78j(b)]
### and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder

41.     Paragraphs 1 through 35 are hereby realleged and incorporated by reference, as though fully set forth herein.

42.     As described above, Defendant Doddi engaged in an illegal insider trading scheme in which, in breach of a duty and duties of trust or confidence that she owed to Wells Fargo, she knowingly or recklessly tipped Spivak with material, nonpublic information that was later used to purchase or sell securities.

43.     As described above, Defendant Spivak engaged in an illegal insider trading scheme in which he possessed and used material, nonpublic information which he knew

or should have known was provided to him in breach of a duty of trust or confidence to purchase ADPI securities.

44.     By their conduct described above, Defendants, in connection with the purchase or sale of securities, by the use of any means or instruments of interstate commerce or of the mails, or of any facility of any national securities exchange, directly or indirectly: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices, or course of business which operated or would operate as a fraud or deceit upon any persons, including purchasers or sellers of securities.

45.     By engaging in the conduct described above, Defendants violated, and unless enjoined will again violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests a final judgment:

A.     Permanently enjoining each Defendant from violating, directly or indirectly, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

B.     Ordering each Defendant to disgorge, with prejudgment interest, all illicit trading profits or other ill-gotten gains received as a result of the conduct alleged in this complaint, including, as to Spivak, his own illicit trading profits or other ill-gotten gains as well as the illicit trading profits or other ill-gotten gains realized in his mother's

account, which subsequently was inherited by Spivak and, as to Doddi, the illicit trading profits or other ill-gotten gains of both Spivaks;

C.      Ordering each Defendant to pay a civil monetary penalty pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1];

D.      Retaining jurisdiction over this action to implement and carry out the terms of all orders and decrees that may be entered; and

E.      Granting such other and further relief as the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

A jury trial is demanded on all issues so triable.

Respectfully submitted,

**SECURITIES AND EXCHANGE COMMISSION**

s/ John D. Worland, Jr.
John D. Worland, Jr.
Antonia Chion
Yuri Zelinsky
Jason Litow

Dated:  November 2, 2015